UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>MARCO BATISTA,<br><br>       Petitioner. | No. 11-cr-346 (RJS)<br>No. 16-cv-4716 (RJS)<br><br>ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

  Petitioner Marco Batista moves pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence for using and brandishing a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c)(3). (Doc. No. 47.) For the reasons set forth below, Batista's motion is denied.

## I. BACKGROUND

  In March 2010, Batista and a group of co-conspirators kidnapped a victim for ransom as part of a dispute over stolen narcotics.[1] Specifically, Batista and one of his co-conspirators, Walter Garcia, recruited three men – Armando Parra-DeJesus, Kenny Vargas, and Jose Urena – to travel to Philadelphia to kidnap an individual who had stolen over 15 kilograms of cocaine from Garcia ("Witness 1"). (PSR ¶ 13.) In the event that the kidnappers were not able to locate Witness 1, they were directed to kidnap his brother (the "Victim") as leverage to demand return of the drugs. (*Id.* at ¶¶ 13, 24.)

  On March 21 and 22, 2010, members of the kidnapping conspiracy traveled to Philadelphia and attempted to locate Witness 1 or the Victim. (*Id.* at ¶ 14.) They were unsuccessful. But on March 23, the entire kidnapping crew – Batista, Garcia, Parra-DeJesus, Vargas, and Urena –

---

[1] The facts in this Order are taken from Batista's Presentence Investigation Report ("PSR"), the contents of which Batista never challenged by objection.

returned to Philadelphia and located the Victim. (*Id.* at ¶ 15.) Vargas and Parra-DeJesus then confronted the Victim on the street and ordered him at gunpoint to enter a nearby U-Haul van. (*Id.*) Vargas and Parra-DeJesus eventually transferred the Victim into a Ford Explorer (*Id.* at ¶ 16), whereupon Batista, Vargas, and Urena drove the Victim to Queens, New York. (*Id.* at ¶ 17.) The group took the Victim to an apartment building, where the building superintendent, Felix Pallero – having received advance notice from Batista – led the group to the basement. (*Id.*) For a substantial part of that evening, Batista, Pallero, Vargas, Urena, and Parra-DeJesus (who arrived at the building after disposing of the U-Haul) kept watch over the Victim. (*Id.* at ¶ 18.) Several calls seeking the drug ransom were made to Witness 1, and on at least one occasion, Vargas displayed a handgun during an argument about the stolen narcotics. (*Id.*) Batista also made several calls to Garcia regarding the ransom. (*Id.*)

That same day, around 4:00 p.m., the New York City Police Department ("NYPD") received a 911 emergency call from Witness 1, who reported that his brother had been kidnapped. (*Id.* at ¶ 11.) The Joint Bank Robbery Task Force, comprised of FBI special agents and NYPD detectives, investigated the matter and discovered the Victim's location in Queens. (*Id.* at ¶ 19– 20.) The next day, Task Force officers stormed the building where the Victim was being held and rescued him. (*Id.*) Three of the conspirators – Vargas, Urena, and Pallero – were promptly arrested. (*Id.* at ¶ 21.) Batista was arrested more than six months later, on October 19, 2010. (*Id.*)

On April 14, 2011, Batista waived indictment and was charged in a three-count felony information with: (i) conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c) (Count One); (ii) kidnapping, in violation of 18 U.S.C. § 1201(a)(1) (Count Two); and (iii) aiding and abetting the use and carrying of a firearm which was brandished during and in relation to the kidnapping offenses charged in Counts One and Two, in violation of 18 U.S.C. § 924(c) (Count

2

Three).  (Doc. Nos. 23, 24.)  Batista ultimately pleaded guilty to all three counts pursuant to a plea agreement.  (PSR ¶ 25.)  In consideration of Batista's guilty plea, the government agreed not to prosecute him for any other offenses, including drug-related crimes associated with the conspiracy.  (Doc. Nos. 23, 37-1 at 2).  In his plea allocution, Batista admitted that he and his co-conspirators went to Philadelphia to look for the Victim and "forced [the Victim] to come" against his will to New York, where the co-conspirators planned to keep the Victim until Witness 1 returned the drugs he had stolen.  (Doc. No. 26 ("Plea Tr.") at 37:8–25.)  Batista also agreed that he had provided a pistol that one of his co-defendants had brandished during the offense, and that he knew that the firearm was used to seize the Victim in Philadelphia and confine him in the Queens apartment.  (*Id.* at 38:1–39:7; 40:4–22.)

During the sentencing hearing held on April 12, 2012, Batista's counsel noted that Batista unequivocally accepted responsibility for participating in the narcotics distribution that had precipitated the kidnapping event.  (Doc. No. 43 ("Sentencing Tr.") at 17:2–13 ("Up front, Judge, he has been selling drugs.  Nobody's going to deny that to you.").)  In fact, defense counsel argued that Batista's acceptance of responsibility for his involvement in narcotics trafficking should be a mitigating factor in Batista's sentencing, even though Batista had not been charged with any drug-related crimes.  (*Id*. at 17:7–18.)  Batista, in his own statement before the Court, also admitted that he was "guilty" of coordinating the transportation of the 15 kilograms of cocaine and that he had participated in the kidnapping after the cocaine was stolen because he feared that he would be held "responsible" for the loss of such a large amount of drugs.  (*Id.* at 45:5–46:10.)  In rejecting any suggestion that "Mr. Batista was coerced or that there was duress involved in his becoming involved in" the kidnapping (*id.* at 8:6–23), the Court noted that, according to undisputed portions of the PSR, Batista had been dealing drugs for 15 years (*id.* at 24:2–3).

The Court ultimately imposed on Batista a below-Guidelines sentence of 160 months on Counts One and Two, followed by an 84-month consecutive sentence on Count Three, resulting in a principal sentence of 244 months. (*Id.* at 56:16–25.) The Court also imposed a three-year term of supervised release. (*Id.* at 57:1–4.) In reaching its sentencing determination, the Court expressed its belief that "the seriousness of this crime . . . can't be overstated," noting that it involved "a concerted effort to cross state lines, to hold a person for ransom, [and] to abduct them at gunpoint on the street." (*Id.* at 54:7–8; 55:3–6.) As the Court explained, because the crime at issue was "so serious," and "the violence that was potentially realized in this case was so high," the sentence needed to send a message and deter others. (*Id.* at 58:15–18.)

Though Batista's plea agreement contained an appeal and collateral attack waiver for "any sentence within or below the Stipulated Guidelines Range of 376 to 449 months' imprisonment," Batista filed a notice of appeal on April 23, 2012. (Doc. No. 37-1 at 5; *see* Doc. No. 40.) The Court of Appeals dismissed the direct appeal after Batista failed to file his opening brief and appendix. (*See* Doc. No. 46.) The mandate ordering dismissal was issued on July 19, 2013. (*Id.*)

Now before this Court is Batista's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Batista seeks to vacate his conviction for Count Three on the grounds that "neither the conspiracy to commit kidnapping count nor the [substantive] kidnapping count qualif[ies] as a 'crime of violence'" under *Johnson v. United States*, 135 S. Ct. 2551 (2015). (Doc. No. 47 at 5.) Batista moved for a stay pending the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), reasoning that the constitutionality of the residual clause – otherwise known as the "risk-of-force" clause – would control this case. (Doc. Nos. 53, 56.) The government opposed, arguing that the Second Circuit's decision in *United States v. Patino*, 962 F.2d 263, 267 (2d Cir. 1992), compelled a finding that kidnapping was a crime of violence under

4

the elements – or "force" – clause of § 924(c), "rendering the constitutionality of the [residual] clause irrelevant to the merits of the instant petition." (Doc. No. 55 at 1–2.) The Court granted Batista's motion for a stay pending *Davis*. After the Supreme Court issued its opinion in *Davis*, this Court continued the stay pending the Second Circuit's reconsideration of its decision in *United States v. Barrett*, 903 F.3d 166 (2d Cir. 2018), which had been vacated and remanded by the Supreme Court for further consideration in light of *Davis*. (Doc. No. 58.)

Following the Second Circuit's revised decision in *Barrett*, 937 F.3d 126 (2d Cir. 2019), the government submitted a letter to the Court indicating that it intended to consent to vacatur of the § 924(c) conviction and requesting that the Court resentence Batista on the remaining counts. (Doc. No. 73 at 1–2.) Although the Court set a schedule for the parties to make supplemental sentencing submissions, the Court also directed the parties to address the question of whether kidnapping in violation of 18 U.S.C. § 1201(a)(1) is a crime of violence after *Davis*. (Doc. Nos. 62, 72, 75.) The parties now both argue that Count Two of the Superseding Information – kidnapping, in violation of 18 U.S.C. § 1201(a)(1) – is not a crime of violence as defined by § 924(c)(3).[2] (Doc. Nos. 73, 76.) In other words, the parties agree that Batista's kidnapping conviction can no longer serve as a predicate to his conviction on Count Three under 18 U.S.C. § 924(c), and therefore urge the Court to dismiss that count and proceed to resentence Batista on Counts One and Two.

---

[2] In its letter to the Court, the government reversed its earlier position, explaining that after *Davis* a crime of violence must have as a categorical element the actual, attempted, or threated use of physical force, and that in its view, kidnapping in violation of § 1201(a) does not require such force. (Doc. No. 73 at 1–2). Although the government now contends that this presents an open question in this Circuit, it makes no mention of its earlier argument that *Patino* compelled a finding that kidnapping was a crime of violence under the elements clause. *See* 962 F.2d at 267.

## II. LEGAL STANDARDS

Section 2255 enables a prisoner sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The bar for a § 2255 collateral challenge is high. Because such challenges "are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted).

The "procedural default rule" is one mechanism that limits the scope of challenges under § 2255. This rule provides that a defendant is precluded from making collateral challenges based on issues that he failed to raise on direct appeal unless he can demonstrate either (1) cause for his failure to raise the claim at the appropriate time and prejudice from the alleged error or (2) that he is actually innocent. *Yick Man Mui*, 614 F.3d at 51–52, 54 (internal quotation marks omitted); *see also Bousley v. United States*, 523 U.S. 614, 622 (1998).

A defendant may demonstrate "cause" by establishing that a claim was futile at the time of direct appeal, but that subsequent legal developments have rendered the claim feasible. *See Bousley*, 523 U.S. at 622; *accord United States v. Thorn,* 659 F.3d 227, 233 (2d Cir. 2011). The "prejudice" requirement is met by establishing "actual prejudice resulting from the errors of which [Petitioner] complains," *Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012) (internal quotation marks omitted), *i.e.*, that the alleged errors "worked to [Petitioner's] actual and substantial disadvantage," *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (emphasis omitted). In the context

of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for [the] errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Strickler v. Greene*, 527 U.S. 263, 296 (1999) (finding no prejudice from procedural default where "petitioner has not shown that there is a reasonable probability that his conviction or sentence would have been different").

To overcome procedural default by proving actual innocence, a defendant must establish that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him" had the case gone to trial.  *Bousley*, 523 U.S. at 623 (internal quotation marks omitted).  In evaluating actual innocence, reviewing courts should assess claims "in light of all the evidence regardless of admissibility but with proper consideration for the weight the evidence can bear in light of relevance and reliability."  *Hyman v. Brown*, 927 F.3d 639, 659 (2d Cir. 2019) (internal quotation marks omitted); *see also United States v. Miller*, 954 F.3d 551, 559 (2d Cir. 2020) (noting the reviewing court may look beyond the trial record in determining whether an error affects the "fairness, integrity, or public reputation of judicial proceedings" (internal quotation marks omitted)).

Courts within the Second Circuit may raise the issue of procedural default *sua sponte*, particularly where default is "manifest from the record."  *Rosario v. United States*, 164 F.3d 729, 732–33 (2d Cir. 1998); *accord Kuhali v. Reno,* 266 F.3d 93, 101 (2d Cir. 2001) (noting that the Court "ha[s] discretion to raise the issue [of procedural default]" itself).  And the importance of finality in federal criminal judgments is "greatest in the context of guilty pleas because the vast majority of criminal convictions result from such pleas and because the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a

petition to set aside a guilty plea." *Rosario*, 164 F.3d at 732 (quoting *Lucas v. United States*, 963 F.2d 8, 14 (2d Cir.1992) (internal quotation omitted)).

### III. DISCUSSION

In his § 2255 motion, Batista seeks vacatur of his 18 U.S.C. § 924(c) conviction in light of *United States v. Davis*, and resentencing on his remaining counts of conviction. (Doc. Nos. 47 at 5, 69 at 2.) Batista argues, and the government now agrees, that kidnapping in violation of 18 U.S.C. § 1201(a) is not categorically a crime of violence under the elements – or "force" – clause of § 924(c). (Doc. Nos. 73, 76.) And because *Davis* rendered unconstitutional the residual clause of § 924(c), Batista now argues that his kidnapping conviction can no longer serve as a predicate for his § 924(c) conviction. Whether kidnapping qualifies as a categorical crime of violence after *Davis* remains an unanswered question in this Circuit, but this Court need not answer that question today.[3] Instead, as a threshold matter, the Court finds that Batista's claim is procedurally barred because he cannot show that he suffered prejudice from any alleged constitutional error, nor that he is actually innocent under § 924(c).

In this case, where Batista's sentence was the product of a guilty plea and finality is an especial concern, *sua sponte* consideration of procedural hurdles is appropriate. *See Rosario*, 164 F.3d at 732. Having failed to challenge his § 924(c) conviction on direct appeal, Batista bears the burden of proving that he had cause for his earlier failure to appeal that conviction and suffered prejudice from the alleged legal error. *See Yick Man Mui*, 614 F.3d at 53. He cannot meet that burden here. Under § 924(c)(1), whoever uses a firearm in furtherance of "any crime of violence *or* drug tracking crime" has committed a felony. 18 U.S.C. § 924(c)(1) (emphasis added).

---

[3] The Second Circuit has had multiple opportunities to address the question of whether kidnapping qualifies as a categorial crime of violence after *Davis*, but it has declined to do so. *See, e.g.*, *United States v. Eldridge*, 2 F.4th 27, 35 (2d Cir. 2021); *United States v. Minaya*, 841 F. App'x 301, 304 (2d Cir. 2021).

8

Importantly, § 924(c) does not require that the predicate crime of violence or drug trafficking offense actually be charged, much less that the defendant have been found guilty or pleaded guilty to that offense. *See United States v. Dussard*, 967 F.3d 149, 157 (2d Cir. 2020). It is enough that "there is legally sufficient proof that the predicate crime was, in fact, committed," *id.* (internal quotation marks omitted) – like, for example, a defendant's admission to such conduct as part of his guilty plea. Therefore, Batista's admission that he supplied a firearm in furtherance of a narcotics conspiracy would render him in violation of § 924(c) under the "drug trafficking" predicate, even if, post-*Davis*, kidnapping could not serve as a categorical "crime of violence" predicate.

In *United States v. Dussard*, the Second Circuit upheld a § 924(c) conviction that had been predicated on a Hobbs Act robbery conspiracy charge, finding that the § 924(c) conviction remained valid after *Davis* because a narcotics trafficking conspiracy had been available as an alternate predicate. After Dussard pleaded guilty to two of the counts charged in his information – Hobbs Act robbery and possession of a firearm in violation of § 924(c) – the district court dismissed the other related narcotics charge on motion of the government. *Dussard*, 967 F.3d at 154. Dussard was never actually convicted of the charged narcotics conspiracy offense. As the Second Circuit explained, however, "the applicability of § 924(c)(1)(A)(i) '*does not require the defendant to be convicted of (or even charged with) the predicate crime*, so long as there is legally sufficient proof that the predicate crime was, in fact, committed.'" *Id.* at 157 (emphasis in original) (internal quotation marks omitted). The Second Circuit thus affirmed Dussard's § 924(c) conviction on appeal in light of the previously dismissed narcotics predicate, as he "ha[d] not shown any reasonable probability that he would not have pleaded guilty to [the § 924(c) charge]" had it been predicated on the narcotics count. *Id.* at 158. Further, pointing to Dussard's stipulation

at his plea hearing, *id.* at 157 ("I conspired with individuals who possessed firearms in order to steal narcotics at gun point"), and the PSR's findings that he planned to sell the drugs for profit, the Second Circuit concluded that Dussard "would have had little genuine hope of being acquitted of the . . . drug trafficking conspiracy after a trial," *id*. The court also noted that "nothing about [Dussard's] plea or the plea hearing itself provides any basis for an argument that he was willing to plead guilty to [the § 924(c) charge] only if it was tied to the charge of Hobbs Act conspiracy . . . instead [of] the drug trafficking predicate," which makes "no difference in the offense of conviction or in the punishment." *Id.* at 158; *see also United States v Bido*, No. 19-cv-8288 (RJS), 2021 WL 1141319, at *3–4 (S.D.N.Y. Mar. 23, 2021).

In a subsequent summary order, *United States v Kilpatrick*, No. 15-3012-cr, 2021 WL 3354737, at *5 (2d Cir. Aug. 3, 2021), the Second Circuit likewise ruled that even where an individual defendant, Mizell, was not charged with a narcotics conspiracy count in a multi-defendant indictment, Mizell's conduct relating to the narcotics conspiracy could support a viable alternative predicate to his § 924(c) conviction. In that case, the Second Circuit found that Mizell's challenge to his RICO conspiracy-predicated § 924(c) conviction failed, because a narcotics conspiracy for which Mizell's co-conspirator – but not Mizell – had been charged served as a viable alternative predicate, and there was no evidence that Mizell would have failed to plead had his § 924(c) been predicated on the drug charges. *Kilpatrick*, 2021 WL 3354737, at *5 (noting that "Mizell was charged with, and admitted to, all of the underlying criminal conduct that formed the basis for his RICO conviction, including drug trafficking" and that he did not object to the facts included in his PSR about his leadership of a gang that engaged in drug trafficking).

Like the defendant in *Kilpatrick*, Batista was never charged with a narcotics conspiracy offense. Nevertheless, the record clearly demonstrates his participation in drug trafficking. The

10

purpose of the kidnapping to which Batista pleaded guilty, as documented in undisputed portions of the PSR, was to recover stolen narcotics. (PSR ¶ 24.) In his plea allocution, Batista stated that the kidnapping occurred because "[the Victim's] brother had taken drugs from [Garcia]," and the plan was to hold the Victim until the brother fulfilled a promise to "return the drugs to [Garcia]." (Plea Tr. 37:8–25.) At sentencing, Batista's counsel conceded "[u]p front" that Batista "ha[d] been selling drugs. Nobody's going to deny that to you." (Sentencing Tr. at 17:11–13.) In his own statement at sentencing, Batista conceded he was "guilty" of arranging a cocaine transaction that went bad, which precipitated the events at issue. (*Id.* at 45:5–46:10.) Batista's charging instrument did not ultimately list any narcotic-related counts because he waived indictment – the charges brought against him were already the end product of plea bargaining. But Batista bears the burden of proving there was a "reasonable" likelihood of a different result – that is, that he would not have pleaded guilty as he did if required to admit to a narcotics offense instead of a kidnapping one. *See Hill*, 474 U.S. at 59. He cannot.

Notably, Batista's co-conspirator Garcia was charged with a narcotics conspiracy in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), in addition to multiple counts of kidnapping and use of a firearm in violation § 924(c), highlighting the other charging options at the government's disposal. (Sentencing Tr. at 30:2–31–9; Case No. 11-cr-00989 (JSR), Doc. Nos. 28, 58 at 1–2.)[4] Accordingly, Batista cannot prove that he suffered any real prejudice because the uncontested record reflects that he participated in the same drug-trafficking conspiracy.

Like the defendants in *Dussard* and *Kilpatrick*, Batista "would have had little genuine hope" of prevailing at trial on a narcotics charge. *Dussard*, 967 F.3d at 157. Moreover, Batista

---

[4] The Court is permitted to take judicial notice of publicly available records, particularly when the documents are drawn from cases related to the matter *sub judice*. *See, e.g.*, *Rosado-Acha v. Red Bull Gmbh*, No. 15-cv-7620 (KPF), 2016 WL 3636672, at *7 (S.D.N.Y. June 29, 2016).

11

offers no evidence to support the proposition that he would have insisted on going to trial had he been required to plead guilty to a § 924(c) charge predicated on narcotics trafficking, especially since this would have resulted in an identical sentencing range as set forth in Batista's plea agreement. Thus, Batista cannot prove he suffered prejudice for having been convicted on a kidnapping rather than a narcotics predicate, or that but for the error identified in *Davis*, "there is a reasonable probability that . . . he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Nor can Batista prove that he was actually innocent. In considering an "actual innocence claim[ ]," the Court should consider "all the evidence regardless of admissibility." *Hyman*, 927 F.3d at 659 (internal quotation marks omitted); *cf. Miller*, 954 F.3d at 559. In light of the uncontested PSR and the admissions made at sentencing by Batista's counsel and Batista himself, there can be no doubt that Batista was involved in narcotics trafficking and that he supplied a firearm in furtherance of that trafficking. In a determination of actual innocence, it does not matter that Batista was not formally charged with a narcotics conspiracy. The "plain language of § 924(c) requires only that the predicate crime of violence (or drug trafficking) have been committed," not that "the defendant must be separately charged with that predicate crime and be convicted of it." *Johnson v. United States,* 779 F.3d 125, 129–30 (2d Cir. 2015). Considering Batista's express admissions, the Court finds that Batista has not met the "demanding" standard required to show that he is actually innocent of the crimes charged. *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013).

\* \* \*

For the reasons stated above, Batista's challenge to his § 924(c) conviction is procedurally defaulted and his motion under 28 U.S.C. § 2255 is DENIED. Moreover, because Batista has not

"made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005). The Court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this order would not be taken in good faith since any appeal would "lack[] an arguable basis in law or fact." Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995). Batista thus may not proceed in forma pauperis. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962). The Clerk is respectfully directed to terminate the motions pending at docket numbers 47, 69, 71, 77, 78, 79, and 83 of case number 11-cr-346, and to close case number 16-cv-4716.

SO ORDERED.

Dated:     December 29, 2021
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation